UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

DARCY ANN HAGER, fka DARCY ANN
FRANTZ, aka DARCY ANN FRANTZ-
HAGER, aka DARCY FRANTZ-HAGER,
aka DARCY A. FRANTZ,

           Debtor.

_____/

Case No. DK 09-14959
Hon. Scott W. Dales
Chapter 7

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

Darcy Hager (the "Debtor") filed a chapter 7 bankruptcy petition with this court on December 23, 2009 when, like many debtors, she was still embroiled in litigation with a former spouse. Attorney Lawrence Newmeyer was representing the Debtor in connection with the family court matter and had a claim against her for prepetition legal services. During the bankruptcy proceeding he continued to represent her and she incurred legal fees for which she still remains obligated. When the relationship between Mr. Newmeyer and the Debtor deteriorated, principally as the result of her failure to pay him, Mr. Newmeyer filed suit in state court to recover his legal fees (the "Lawsuit"), including, to some extent, his prepetition claim against the Debtor.

At the time he commenced the Lawsuit, however, he—like the Debtor's other creditors—was subject to the court's discharge entered on May 5, 2010. (Exh. 6 and DN 36) (the "Discharge"). Although the Debtor listed his claim on Schedule F and included him on her bankruptcy mailing matrix, Mr. Newmeyer asserts he did not receive any

notice of the Debtor's bankruptcy filing until he received a copy of the Discharge in the mail. In addition, the Debtor did not tell Mr. Newmeyer of her bankruptcy filing as he continued to represent her in her support and custody case, nor did she raise it as a defense to the Lawsuit until after the state court entered judgment against her. Once that happened, the Debtor filed a motion for sanctions against Mr. Newmeyer, seeking to hold him in contempt for violating the discharge injunction (the "Contempt Motion," DN 70).

The court held an evidentiary hearing on April 24, 2014 in Kalamazoo, Michigan, to consider whether Mr. Newmeyer violated the discharge injunction; whether the court should hold him in contempt; and whether some compensatory award to the Debtor is appropriate. At the evidentiary hearing, Mr. Newmeyer and the Debtor each testified, and each offered exhibits which the court admitted into evidence mostly on stipulation. In addition, the court has reviewed the document entitled "Lawrence Newmeyer's (Attorney's) Request to Darcy Frantz-Hager (Debtor) to Admit and Proof of Service" (the "Rule 36 Admissions") attached to Mr. Newmeyer's trial brief filed January 24, 2014 (DN 89). Because the Debtor did not timely respond to the Rule 36 Admissions, the court has treated the statements included therein as established for purposes of this contested matter. *See* Fed. R. Civ. P. 36 and Fed. R. Bankr. P. 9014(c) (incorporating Rule 36 into contested matters).

The court has carefully considered the testimony and exhibits admitted during the hearing and, for the reasons set forth in this Opinion and Order, will hold Mr. Newmeyer in contempt. However, principally due to the Debtor's concealment of her Discharge from Mr. Newmeyer, the court will limit its compensatory award to invalidating only that portion of the state court judgment that comprises Mr. Newmeyer's prepetition claim.

The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52 applicable herein pursuant to Fed. R. Bankr. P. 7052.

## I.   JURISDICTION

The court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(a), and the matter has been referred to the court by the United States District Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2.  The Contempt Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and (O).  The court  has ample authority to protect its judgments, including the discharge injunction in this case.

## II.   ANALYSIS

A.   Factual Background

Off and on throughout the period of 2007 to 2011, Mr. Newmeyer represented the Debtor in legal proceedings in Kalamazoo County family court against her ex-husband, James Hager.  Mr. Newmeyer testified that he began representing the Debtor after she and Mr. Hager divorced but while they were embroiled in contentious litigation regarding support and custody of their children.  The documentary evidence and Mr. Newmeyer's credible testimony established that he provided services in connection with these proceedings from July 7, 2007 through August 29, 2011, at which time the family court permitted him to withdraw from representation.  (Exh. 9).  As of October 6, 2008, prior to her bankruptcy filing, the Debtor owed Mr. Newmeyer $6,623.00.  (Exh. 7).  Mr. Newmeyer was understandably concerned about the amount of the unpaid legal bill and he refused to continue representing the Debtor unless and until she paid for his services.

(Exh. B).  In October, 2008, after the Debtor failed to pay him what she owed, including "$6,000.00 for past attorney fees and a $1,000.00 retainer," Mr. Newmeyer sent a letter to the Debtor confirming that she "had elected not to hire" him.  (Exh. C).

As the family court proceedings continued, the Debtor persuaded Mr. Newmeyer to resume his representation by tendering $2,000.00 on December 9, 2009 (the "Payment").  She did not advise him of any impending plan to file bankruptcy, even though a week later she was to complete her pre-bankruptcy credit counseling and had apparently consulted with bankruptcy counsel over two months earlier.  (Exh. 1, pp. 9 and 36).  According to Mr. Newmeyer, and without contradiction from the Debtor, the parties memorialized the Payment in a document, the terms of which the Debtor dictated and Mr. Newmeyer transcribed and signed.  (Exh. 8).

The Debtor contends that the Payment represented a retainer and points to the language in Exhibit 8 as evidence.  Specifically it states:

12-09-09

> Received from Darcy Frantz-Hager the sum of $2,000.00 to re-enter the case of Hager v. Hager 04 6448 DM, until the case is closed, with services to be billed at the rate of $110.00 per hour.

/s/

Lawrence Newmeyer

(Exh. 8).  In addition, the Debtor notes that in her Statement of Financial Affairs ("SOFA") at Paragraph 10 she listed the Payment as representing "future legal work" rather than as a payment on account of a prepetition debt at Paragraph 3.  (Exh. 1, pp. 34 & 36).  Mr. Newmeyer contends, in contrast, that he would not have resumed

representation unless she paid down her pre-existing debt, and therefore the Payment was not a retainer but an installment on his overdue legal fees.

Although Exhibit 8 is ambiguous as to whether the Payment was a retainer or a payment on account of an antecedent debt, the document corroborates Mr. Newmeyer's view of the context in which the Debtor made the Payment. The evidence preponderates against treating the Payment as a retainer, and the court so finds.

Mr. Newmeyer demanded $1,000.00 as a "retainer" in his letter to the Debtor dated September 4, 2008 (Exh. B), which might tend to support the Debtor's characterization of the Payment, but the letter also demanded $6,000.00 for unpaid fees. Mr. Newmeyer testified that he does not maintain an IOLTA account. Therefore, he would be unable to hold a retainer and still comply with his professional obligations under the Michigan Rules of Professional Conduct. *See* M.R.C.P.1.15(g).

Furthermore, the court does not regard the Debtor's description of the Payment within her SOFA as dispositive. Significantly, she did not list the Payment on Schedule B or claim it as exempt on Schedule C, as would be expected of a *counseled* chapter 7 debtor who intended to use the Payment to fund post-petition legal services. (Exh. 1, pp. 17-18).[1] These omissions on Schedules B and C undercut the probative effect of the SOFA (Exh. 1, p. 36).

Based upon the Debtor's testimony, the court infers that she would have done almost anything to secure the custody and support of her children, and that she regarded Mr. Newmeyer's services as essential in this regard. Because Mr. Newmeyer was

---

[1] Because an unused retainer is included within the property of the estate, to ensure her authority to use the funds for her own benefit (rather than to pay claims) the Debtor should have exempted the supposed "retainer." *In re St. Joseph Cleaners, Inc.*, 346 B.R. 430, 431-32 (Bankr. W.D. Mich. 2006) (citing *Mapother & Mapother, PSC v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996)).

demanding payment on the past due invoice (Exh. 7), and because the Debtor believed Mr. Newmeyer would not re-enter the custody case without a substantial reduction of that debt, the Debtor acceded to her lawyer's demand.  As a paralegal, she may have dictated the terms of the receipt for the Payment with deliberate ambiguity, but when weighed against the other evidence in the record, the receipt does not establish that the parties agreed to a retainer.

Consequently, from the entire context of the record, including Mr. Newmeyer's credible testimony, the September 8, 2008 letter (Exh. B), the Debtor's schedules (Exh. 1), and the inferences that the Debtor's testimony and her desperate desire to retain Mr. Newmeyer in late 2009, the court infers that the Debtor made the Payment on account of the antecedent debt rather than as a retainer for future services.

So, after receiving the Payment, Mr. Newmeyer resumed work on behalf of the Debtor in March 2010, as shown on the April 11, 2011 invoice.  (Exh. G).  Shortly thereafter, Mr. Newmeyer received a copy of the Discharge from the bankruptcy court. (Exh. 6, including proof of service dated May 7, 2010, DN 37).  At that time, Mr. Newmeyer called the Debtor to inquire about the meaning of the document and, according to his unchallenged testimony, the Debtor told him that her debt to him was not included in her bankruptcy and therefore not subject to discharge.  She also said that he was receiving the Discharge solely to assist him in proving to the state court the hardships that her ex-husband's lack of support imposed on her.

Despite Mr. Newmeyer's presumably superior legal training, and the implausibility of the Debtor's explanation,[2] Mr. Newmeyer evidently accepted the Debtor's remarks about the Discharge at face value and, at his peril, neglected to ascertain its true meaning and the array of consequences that could be visited upon him should he ignore it. Although the court is surprised at Mr. Newmeyer's gullibility and casual response to the Debtor's explanation of the Discharge, the court infers from the parties' demeanor at trial, as well as the testimony and other evidence in the record, that the Debtor dominated the attorney client relationship. Therefore, because she continued to need Mr. Newmeyer's assistance in her support and custody battle, he continued working for her.

The evidence also establishes without contradiction that the Debtor incurred a total of $18,404.00 in debts to Mr. Newmeyer for legal services. This debt comprised $6,623.00 for prepetition legal work (invoiced on October 6, 2008), and $11,781.00 for post-petition legal work (invoiced April 11, 2011). Mr. Newmeyer's April 11, 2011 invoice, attached as Exhibit A to his state court complaint (Exh. G), included the following summary of charges and payments:

TOTAL TIME FOR ALL CATEGORIES                107.1

| @ $110.00/hour) | $11,781.00 |
|---|---|
| Prior bill of 10-6-08 | +$6,623.00 |
| First sub-total | $18,404.00 |
| Less payments made by Plaintiff [James Hager] | -$3,000.00 |

---

[2] The court infers from the proof of service that Mr. Newmeyer received the Discharge from the court and the Bankruptcy Noticing Center, and it is highly unlikely that either of these entities was interested in assisting the Debtor in proving her case against her ex-husband.

| Second sub-total | $15,404.00 |
|---|---|
| Less payments made by client | -$3,250.00 |
| FINAL TOTAL DUE NOW | $12,154.00 |

(Exh. G).  In his state court complaint, Mr. Newmeyer also gave the Debtor credit for an additional $300.00 payment that she made in June, 2011.  From the foregoing, it appears that the Debtor or Mr. Hager made $6,550.00 on account of her debt to Mr. Newmeyer, with payments spanning the petition date.

The Debtor does not contradict this payment history, but rather disputes the application of payments.  Mr. Newmeyer testified that each of the payments he received was applied to the October 2008 balance of $6,623.00.  The Debtor regards that application of payments as improper because the prepetition debt would have been discharged in her bankruptcy.

Clearly, the Debtor ardently desired that Mr. Newmeyer continue representing her in the family court.  Mr. Newmeyer understood this and to this extent exerted pressure on her to pay him as a condition of his continued assistance (both before and after the order for relief and the Discharge).  (Exh. F) (Debtor's response to Mr. Newmeyer's motion to withdraw from representation).  But, according to M.C.R. 1.16(b)(4), Mr. Newmeyer had no obligation to continue representing the Debtor indefinitely without being paid, as the state court evidently held when it granted his motion to withdraw from representation in August 2011.  (Exh. 9) (Order Allowing Withdrawal of Defense Counsel, attached as Exhibit G to Mr. Newmeyer's state court complaint).[3]

---

[3] The Debtor did not contend during the hearing before this court that Mr. Newmeyer's insistence upon payment violated the Discharge, only that the Lawsuit did.  There was no evidence in the record to undercut the voluntariness of any of the payments from the Debtor to Mr. Newmeyer, and the court will not draw any inferences otherwise.

In September, 2011, Mr. Newmeyer commenced the Lawsuit in the 8th District Court. As Debtor's counsel explained during the hearing, the Debtor's malpractice counterclaim prompted the 8th District Court to transfer the proceeding to the 9th Circuit Court where it was assigned to the Honorable Alexander C. Lipsey. On Mr. Newmeyer's motion, Judge Lipsey dismissed the Debtor's counterclaim without prejudice, and entered judgment in Mr. Newmeyer's favor in the amount of $12,089.89. (Exh. 11). The entry of Judge Lipsey's judgment prompted the Debtor to file the Contempt Motion.

B.      The Discharge

From a debtor's perspective, a discharge is the key to the prison of debt, the single most important order upon which a fresh start depends. The discharge order works because of its breadth and automatic impact. More specifically, § 524 provides that a bankruptcy discharge, *inter alia*:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . .

11 U.S.C. § 524(a). These considerable benefits take effect when the court enters a form order known as the "discharge," as the court did in this case on May 5, 2010. (Exh. 6).

Although a discharge under § 524 provides broad injunctive and declaratory relief, it does not create a private right of action for damages arising from its violation. *See Pertuso v. Ford Motor Credit Corp.*, 223 F.3d 417, 422-23 (6th Cir. 2000). Courts,

however, are not powerless to carry their orders into effect and have generally enforced the discharge injunction through the traditional exercise of civil contempt powers. *See, e.g., Holley v. Kresch Oliver, PLLC*, 473 B.R. 212 (Bankr. E.D. Mich. 2012) (citing *Pertuso*).

Under the precedents of our Circuit, a debtor who seeks to hold a creditor in contempt for violating the discharge injunction must "show[ ] by clear and convincing evidence that [the creditor] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Stewart*, 499 B.R. 557, 573 (Bankr. E.D. Mich. 2013 (*citing Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)). Here, the Debtor bears the burden of proving that Mr. Newmeyer actually knew about the Discharge and that, through voluntary action, violated it. *Gunter v. Kevin O'Brien & Associates Co. LPA (In re Gunter)*, 388 B.R. 67, 72 (Bankr. S.D. Ohio 2008).

As the court noted in its Pretrial Order and as the parties conceded at trial, whether (or to what extent) Mr. Newmeyer sought to include his prepetition claim for attorney fees within the state court Lawsuit depends largely on how he applied the payments he received from or on behalf of the Debtor beginning in late 2009 and continuing into early 2011. If these payments fully retired the prepetition debt by the time he filed the Lawsuit they would fall outside the proscription of § 524(a); if, on the other hand, the Lawsuit asserted a right to recover prepetition, discharged debt, it would have violated the discharge injunction,[4] and the state court's judgment would be void to the extent it compelled payment of a discharged debt.[5]

---

[4] 11 U.S.C. § 524(a)(2).
[5] 11 U.S.C. § 524(a)(1).

In Michigan, the law presumes that payments from a debtor to a creditor will be applied to the oldest debt first. *See Comfort Control Supply Co., Inc. v. Hunter (In re Hunter)*, 437 B.R. 239, 245 n.4 (Bankr. W.D. Mich. 2010); *Corradini v. Corradini (In re Corradini)*, 276 B.R. 571, 575-76 (Bankr. W.D. Mich. 2002).  Although Michigan law also recognizes that a debtor may specify how payments should be applied, she must do so by indicating her preferences at the time of the payments.  If the debtor fails to specify, the creditor may apply the payments as he sees fit.  *See, generally, Corrradini*, 276 B.R. at 575-76.  These payment rules derive from state law, and the court applies them to this dispute because the Bankruptcy Code provides no rule governing the application of payments.  28 U.S.C. § 1652.  Moreover, in this court, state law rules will govern even if they affect the scope of a debtor's discharge.  *See, e.g., Hunter*, 437 B.R. at 245 (applying state law rules governing payment application to determine amount of non-dischargeable debt).

Although the Debtor's attorney argued in his closing remarks that the post-petition payments should somehow be applied to the post-petition debt, the court sees no testimony to support that conclusion, nor, for that matter, any legal authority other than perhaps the general policy favoring the Debtor's fresh start.  Nevertheless, in view of the applicable state law, the court finds that Mr. Newmeyer properly applied each payment to the prepetition balance.

The court makes this finding principally in reliance on Mr. Newmeyer's testimony that his re-entry into the custody case was conditioned upon retiring the earlier debt, and the absence of any testimony from the Debtor indicating that she directed payments to be applied in a manner other than as Mr. Newmeyer described.  As noted

above, the court does not regard the Payment made in December, 2009 as a retainer, and the court finds that the post-petition payments were voluntary. *See* 11 U.S.C. § 524(f) (nothing in § 524(c) or (d) prevents a debtor from voluntarily paying any debt). Indeed, the whole point of § 524(f) is to permit debtors to pay discharged debts if they so choose, without having to reaffirm the debt. Here, the record amply supports a finding, which the court makes, that the Debtor intended to induce Mr. Newmeyer to continue representing her in the custody proceeding by voluntarily paying him on account of the prepetition debt. By underplaying the effect of her bankruptcy on this relationship, she was able to have him continue being her advocate, a role she once regarded as crucial to her winning custody of her children.

Given the court's conclusion that the $6,550.00 paid by or on behalf of the Debtor was properly applied to the prepetition debt of $6,623.00 as reflected on the October 2008 invoice, the court concludes that when Mr. Newmeyer commenced the Lawsuit he sought to recover only $73.00 in prepetition, discharged debt. The balance of the claim in the Lawsuit was to recover post-petition, non-discharged debt. 11 U.S.C. § 727(b) (chapter 7 discharge affects debts that arose before, or are treated as if they arose before, the order for relief). Nevertheless, his admission that he received a copy of the Discharge in June, 2010 establishes his knowledge of the discharge injunction, notwithstanding his acceptance of the Debtor's implausible explanation.

By failing to challenge the Debtor's statements, Mr. Newmeyer inexplicably and recklessly assumed that his prepetition claim against the Debtor was somehow not included in her bankruptcy. Of course, this foolhardy assumption is at odds with the

legal framework of the Bankruptcy Code and Mr. Newmeyer ought not to have relied on his client for her interpretation of the Discharge and applicable law.

Nevertheless, it appears that even when discussing the Discharge with Mr. Newmeyer, the Debtor sought to assure him that he would not be affected by the bankruptcy. This is consistent with his uncontested testimony to the effect that the Debtor never told him of her plans to file for relief under Title 11 in December 2009 when she tendered the Payment to him; never told him that she had filed for protection under the bankruptcy code during the entire time he represented her in her custody battle; and never invoked the discharge injunction during the course of the Lawsuit, instead waiting until she lost the case.

The court acknowledges that a debtor does not waive a discharge by failing to assert it, but a sophisticated debtor who conceals the fact of her bankruptcy protection from a creditor in order to preserve a relationship or some other benefit should not be surprised if the court does not share her indignation when the creditor violates the discharge injunction.

Therefore, the court finds that the Debtor kept her bankruptcy from Mr. Newmeyer in an effort to induce him to continue representing her in the custody proceedings. Nevertheless, it appears that before Mr. Newmeyer filed the Lawsuit, he was aware of the discharge and knowingly included a discharged debt within his prayer for relief. Because of the court's view of the payment application rules, however, the Lawsuit included a *de minimis* discharged debt ($73.00).

C.      Contempt and Remedy

Courts have concluded, as this court does, that filing a complaint to recover a prepetition debt, knowing that the court has entered a discharge, constitutes contempt of the court.  The court, accordingly, finds Mr. Newmeyer in contempt.  However, the contempt of the discharge injunction offends not the Debtor, but the court that issued the injunction.  *Pertuso*, 233 F.3d at 421 (recognizing that no private right of action exists for violations of § 524(a), but that "the traditional remedy for violation of [the discharge] injunction lies in contempt proceedings...."); *In re Perviz*, 302 B.R. 357 (Bankr. N.D. Ohio 2003).  To similar effect, Judge Speer noted that "when a party is in contempt, the imposition of sanctions, not an award of damages, is the appropriate remedy as, by knowingly violating a court order, the contemptor's actions transgressed the court's authority—any damage to an individual party, no matter the seriousness of the transgression, is merely incidental." *Chambers v. Greenpoint Credit (In re Chambers)*, 324 B.R. 326 (Bankr. N.D. Ohio 2005).

Nevertheless, as the Bankruptcy Appellate Panel for the Sixth Circuit observed, courts finding a violation of the discharge injunction generally take steps to compensate the Debtor for damages caused as the result of the contempt, sometimes including attorney fees as the Debtor has requested here.   *Badovick v. Greenspan (In re Greenspan)*, 2011 WL 310703, 464 B.R. 61 (6th Cir. BAP 2011) (unpublished table opinion).  The court, however, must be careful not to encourage litigation over discharge violations that ought to have been resolved informally.  *Cf. In re Hill*, 222 B.R. 119, 124 (Bankr. N.D. Ohio 1998) (where the violation is relatively minor and the debtor's sole damages are attorney's fees, the court "should review those fees carefully to avoid the

reality or appearance that the Court is rewarding an excessively litigious approach to such violations"). Therefore, this court has considerable discretion in fashioning its response to Mr. Newmeyer's contempt. *In re Tubbs*, 302 B.R. 290, 291 (Bankr. W.D. Ark. 2003).

The court has carefully considered the circumstances surrounding Mr. Newmeyer's contempt and has decided to void the state court judgment to the extent it authorized Mr. Newmeyer to collect a discharged debt, *i.e.*, $73.00. The court will permit the judgment to stand for the balance of the fees which it regards as allocable to the post-petition transactions. To effectuate the court's judgment, Mr. Newmeyer shall file a document with the Kalamazoo County Circuit Court indicating that the judgment has been satisfied to the extent of $73.00.

The Debtor has requested her attorney fees from Mr. Newmeyer as damages for his contempt. Having examined the equities of the controversy, the court is not moved to shift the burden of this adversary proceeding to Mr. Newmeyer. His contempt, though the product of his reckless reliance on the Debtor's pretended interpretation of the Discharge, his shoddy billing practices, and seeming unprofessionalism, is not so egregious as to warrant what the court assumes will be thousands of dollars of attorney fees for his unsuccessful attempt to collect $73.00 in discharged debt. A court may compensate a debtor for losses flowing from a violation of the discharge injunction, but should hesitate before compensating for loss resulting from a debtor's disproportionate response or a self-inflicted wound.

III. CONCLUSION AND ORDER

The Debtor could have prevented this litigation by disclosing her bankruptcy before Mr. Newmeyer spent any more time on her custody case, or, at a minimum, at the commencement of the Lawsuit. Instead, she waited until after Judge Lipsey ruled against her.  In other words, though the Debtor did not waive her Discharge by failing to assert it as a defense, she does not come before the court with particularly clean hands.

The court will hold Mr. Newmeyer in contempt and direct him to treat the state court judgment as void to the extent it includes the discharged debt, but the Debtor must bear her own costs and legal fees.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Contempt Motion (DN 70) is GRANTED in part and DENIED in part as follows:

(1) Mr. Newmeyer is in contempt of the court;

(2) Mr. Newmeyer shall, within 14 days after entry of this Order, purge his contempt by filing with the 9th Circuit Court for Kalamazoo County a partial satisfaction of judgment reflecting that $73.00 of the total judgment amount is satisfied;

(3) Each party shall bear his or her own costs and attorney fees associated with the Contempt Motion.

IT IS FURTHER ORDERED that Fed. R. Bankr. P. 7070 shall apply to this contested matter so that if Mr. Newmeyer fails to file the partial satisfaction when and as prescribed herein, the Debtor may do so at Mr. Newmeyer's expense.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Darcy Ann Hager, Imants M. Minka, Esq., Lawrence Newmeyer, Esq., Scott A. Chernich, Esq., chapter 7 trustee, and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 5, 2014**



Scott W. Dales
United States Bankruptcy Judge